**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Power of Fives LLC, | No. CV-22-00722-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| B&R Enterprises Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion for Judgment on the Pleadings or Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 28, Mot.), to which Plaintiff filed a Response (Doc. 33, Resp.) and Defendants filed a Reply (Doc. 37, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I.     BACKGROUND

According to the allegations in the First Amended Complaint (Doc. 1-2 at 2–9, FAC)—the operative pleading—Plaintiff The Power of Fives, LLC is a political consulting and advocacy service provider that "identifies and supports conservative candidates to run for public office in Arizona" (FAC ¶ 11). Plaintiff organized a concert in Phoenix, Arizona, on November 6, 2021, to rally voters and raise awareness for military service members and veterans. In the process, Plaintiff contracted with non-party Live Nation Worldwide, Inc. ("Live Nation") to rent an outdoor venue for the concert. On August 12, 2021, Plaintiff also entered into a Production Agreement with non-party Select Artists Associates, LLC ("SAA"), in which SAA agreed to furnish the services of country music duo Big & Rich

for the concert. Big & Rich consists of Defendants William Kenneth Alphin and John Rich, and the duo is managed by Defendant B&R Enterprises, Inc. ("B&R").[1] To secure Big & Rich's appearance at the concert, SAA entered into a Performance Agreement and Artist Rider with B&R on August 13, 2021.

Plaintiff also entered into production agreements with SAA for other artists to appear at the concert, including Aaron Lewis and Eddie Montgomery.

In late August 2021, Live Nation implemented a COVID Policy requiring that any attendee at a Live Nation event must provide proof of vaccination or a negative COVID test within the previous 72 hours. Plaintiff informed all vendors and providers for the event of Live Nation's new policy for attendees.

On October 11, 2021, B&R's representatives informed Plaintiff that Big & Rich were unhappy with the COVID Policy and that Mr. Rich was personally and politically opposed to the proof of vaccination or negative test requirement. Although Plaintiff and B&R discussed compromises, no decisions on an alternative plan were reached.

On October 12, 2021, Mr. Rich called Aaron Lewis to try to convince him to cancel his performance at the concert because of the COVID Policy. (FAC ¶ 31.) The next day, Mr. Rich tweeted, "Our November 6th show in Phoenix has been cancelled. Sorry for the disappointment, we'll try to make it up ASAP!" (FAC ¶ 32.) B&R did not inform SAA or Plaintiff that Big & Rich intended to cancel. (FAC ¶ 32.) The same day, Mr. Rich tweeted, "I told you I would not comply with the way that building was laying out the demands, and I followed through on it." (FAC ¶ 35.) On October 16, 2021, Mr. Rich tweeted, "Remember to be kind when friends and family realize they are experiencing adverse effects from the propaganda they've been force fed," and in response to a fan who tweeted the Big & Rich concert in Phoenix required "the jab," Mr. Rich tweeted, "Cancelled." (FAC ¶ 37.) On October 20, 2021, Mr. Rich tweeted, "So why do we see millions of fans crammed into football stadiums every weekend nationwide chanting #LetsGoBrandon without medical mandates on them, but certain music venues are demanding vax papers/masks/tests?

---

[1] Plaintiff also names as Defendants the wives of Mr. Alphin and Mr. Rich to reach the marital property.

1    They're not following science, they're following political science." (FAC ¶ 38.) Big &

2    Rich did not perform at the November 6, 2021 concert.

3         Plaintiff alleges that, "[a]s a result of [Mr.] Rich's tweet declaring the Event getting

4    'cancelled,' hundreds of ticketholders requested refunds for their ticket purchases, which

5    [Plaintiff] was obligated to grant," and "ticket sales for the Event plummeted." (FAC ¶¶ 40,

6    41.) Plaintiff claims it suffered damages in the form of low ticket and merchandise sales,

7    hampered political fundraising and advocacy, and a damaged reputation as an effective

8    political organizer.

9         Plaintiff brings a single-count complaint against Defendants for intentional

10   interference with contractual relations. Defendants now move for judgment on the

11   pleadings under Federal Rule of Civil Procedure 12(c) or to dismiss for lack of personal

12   jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

13   **II.    MOTION FOR JUDGMENT ON THE PLEADINGS**

14        **A.    Legal Standard**

15        Under Rule 12(c), "a party may move for judgment on the pleadings" after the

16   pleadings are closed "but early enough not to delay trial." A motion for judgment on the

17   pleadings can be brought to challenge the legal sufficiency of the opposing party's pleading.

18   *Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992).

19   The motion should only be granted if "the moving party clearly establishes on the face of the

20   pleadings that no material issue of fact remains to be resolved and that it is entitled to

21   judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896

22   F.2d 1542, 1550 (9th Cir. 1989). A Rule 12(c) motion is functionally identical to a Rule

23   12(b)(6) motion to dismiss for failure to state a claim, and the same legal standard applies to

24   both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

25        Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v.

26   Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to

27   state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the

28   absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.     Intentional Interference with Contractual Relations**

Under Arizona law, "[a] *prima facie* case of intentional interference with contract requires alleging the following:

(1) the existence of a valid contractual relationship;

(2) knowledge of the relationship on the part of the interferor;

(3) intentional interference inducing or causing a breach;

(4) resultant damage to the party whose relationship has been disrupted; and

(5) that the defendant acted improperly."

- 4 -

*ABCDW LLC v. Banning*, 388 P.3d 821, 831 (Ariz. Ct. App. 2016) (internal citations omitted).

The parties do not dispute that a valid contractual relationship between Plaintiff and third-party SAA—the Production Agreement—existed to furnish Defendants' services for the concert or that Defendants were aware of the contract. Plaintiff alleges three types of interference by Defendants causing breach of the Production Agreement: Defendants' refusal to participate in the concert, Mr. Rich's tweets that the concert was cancelled, and Mr. Rich's phone call to Aaron Lewis to try to convince him to cancel. While the parties agree the first provides a basis for interference with the Production Agreement, they disagree on the second and third. Specifically, Defendants point out that Mr. Rich's tweet said, "*Our* November 6th show in Phoenix has been cancelled" (emphasis added), not the entire event was cancelled. In any case, this tweet did not interfere with the Production Agreement between SAA and Defendants to any degree more than Defendants' actual non-participation in the concert did. Moreover, the tweet did not interfere with the production agreements with respect to other artists, such as Aaron Lewis, because he participated in the concert as agreed. Likewise, to the extent Plaintiff argues that Mr. Rich's tweets regarding the COVID Policy or his phone call to Aaron Lewis constituted intentional interference with other artists' production or performance agreements, that conduct is not actionable because it did not cause a breach, or cancellation, of any other production or performance agreement. The most Plaintiff can argue is that Mr. Rich's alleged attempts to cause the breach or cancellation of other contracts were unsuccessful.

The remaining question as to whether Plaintiff has stated a claim for intentional interference with contractual relations is whether Plaintiff has alleged facts from which the Court can plausibly infer that Defendants' actions were "improper." "To be 'improper,' an interference must be 'wrongful by some measure beyond the fact of the interference itself.'" *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 212 (Ariz. 1986) (quoting *Top Serv. Body Shop, Inc. v Allstate Ins. Co.* 582 P.2d 1365, 1371 (Or. 1978)). That is, "proof that an actor intentionally induced a breach of contract is not sufficient to establish that the actor's conduct

was improper. Rather, 'there is a requirement that the interference be *both* intentional and improper.'" *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005) (quoting Restatement (Second) of Torts ("Restatement") § 767 cmt. a (emphasis added)). In this context, "the defendant's actions must be improper as to motive or means." *Id.*

 "[W]hether a defendant has acted improperly [ ] generally is determined by weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Snow*, 730 P.2d at 212.

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

*Id.* (quoting Restatement § 773).[2] "'Good faith' connotes a moral quality or honesty of purpose." *Id.* at 213.

In a later case, the Arizona Supreme Court elaborated, stating that "[t]o determine whether . . . allegations constitute 'improper conduct' for purposes of this tort, we consider seven factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties."

*Safeway Ins. Co.*, 106 P.3d at 1027 (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 32 (Ariz. 2002); Restatement § 767). The Court gives the greatest weight to the first two factors. *Id.*

---

[2] Here, the Arizona Supreme Court notes that while the Restatement has "eschewed" the term "privilege" in this context, "[t]he Restatement covers essentially the same ground as 'privilege' by imposing a requirement, as an element of the cause of action, that the defendant's interference be 'improper.' These are different labels for the same concept." *Snow*, 730 P.2d at 212 (internal citations omitted).

While a defendant's motive, purpose, and intent may be a question of fact for a jury, *Snow*, 730 P.2d at 213, at this stage of the litigation, Plaintiff still has the obligation to plead sufficient facts from which the Court can infer that Defendants lacked the requisite honesty of purpose in asserting their interest in freedom of expression regarding privately-enforced COVID policies. The question for a factfinder in this case would not be whether the privately-enforced COVID Policy was proper or justified, but rather whether Defendants had a legitimate interest in expressing a view regarding the COVID Policy. Beyond alleging the conduct causing the breach of the Performance Agreement between Plaintiff and SAA—the refusal to perform at the concert, for which there are contractual remedies—Plaintiff alleges no facts from which the Court can plausibly infer that Defendants lacked the requisite honesty of purpose in taking the action they did to oppose the COVID Policy, such that the action was "improper." Stated more generally, Defendants' conduct was not *tortious*.

The Court does not find that amendments to the First Amended Complaint would cure this defect in Plaintiff's claim. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). Accordingly, the Court will grant Defendants' Motion for Judgment on the Pleadings.

## III.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants argue in the alternative that the Court lacks personal jurisdiction over them.

### A.   Legal Standard

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction by challenging the plaintiff's allegations, the plaintiff must "'come forward with facts, by affidavit or otherwise,

supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due

process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

Plaintiff does not contend that the Court has general jurisdiction over Defendants, and Defendants argue they are not subject to specific personal jurisdiction in Arizona based on the facts giving rise to Plaintiff's claim. Whether a court may exercise specific jurisdiction in a given case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate some transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

To meet the first element—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed'

1    his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th

2    Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful direction analysis

3    is most commonly applied in cases alleging tortious conduct, as in this case. *Mavrix Photo,*

4    *Inc.*, 647 F.3d at 1228.

5        **B.    Specific Personal Jurisdiction**

6        Beginning with the first element of the personal jurisdiction analysis, to determine

7    whether a defendant's actions constitute purposeful direction, courts apply the "effects"

8    test that was developed in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The effects test

9    requires that "the defendant allegedly must have (1) committed an intentional act, (2)

10   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to

11   be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206. "The proper question is not

12   where the plaintiff experienced a particular injury or effect but whether the defendant's

13   conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277,

14   290 (2014). In other words, the relationship between the defendant, the forum state, and

15   the litigation "must arise out of contacts that the defendant *himself* creates with the forum

16   State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284.

17       Here, the Court finds that Plaintiff has alleged sufficient facts from which the Court

18   would find Defendants purposefully directed their activities toward Arizona, if the Court

19   assumes Plaintiff has stated a tort claim (which the Court finds Plaintiff has not). As

20   discussed above, the conduct underpinning Plaintiff's claim for intentional interference

21   with contractual relations is Defendants' refusal to participate in the concert in Arizona,

22   causing a breach of the agreement between Plaintiff and SAA. Applying the *Calder* effects

23   test, according to Plaintiff's allegations, Defendants intentionally refused to perform at a

24   concert it had agreed to attend, in Arizona, causing damage by adversely affecting ticket

25   and merchandise sales in Arizona, hampering Plaintiff's political fundraising and advocacy

26   in Arizona, and a damaging Plaintiff's reputation as an effective political organizer in

27   Arizona. Plaintiff thus sufficiently alleges purposeful direction.

28

1            With regard to the second element of the personal jurisdiction analysis, Plaintiff's

2  claim arises out of Defendants' Arizona-related activity. In other words, had Defendants

3  not refused to participate in the concert they agreed to attend, in Arizona, Plaintiff's claim

4  would not have arisen.

5            The final element of the specific jurisdiction analysis requires that the exercise of

6  jurisdiction be reasonable; that is, it must comport with "traditional notions of fair play and

7  substantial justice." *Rio Props., Inc.*, 284 F.3d at 1021 (applying the requirements of *Int'l*

8  *Shoe Co.*, 326 U.S. at 316). In determining reasonableness, the Ninth Circuit considers

9  seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the

10  defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the

11  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most

12  efficient judicial resolution of the controversy; (6) the importance of the forum to the

13  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative

14  forum. *Rio Props., Inc.*, 284 F.3d at 1021 (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11

15  F.3d 1482, 1488 (9th Cir. 1993)); *see also Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475

16  (9th Cir. 1995). A court must balance all seven factors, as no single factor is dispositive.

17  *Rio Props., Inc.*, 284 F.3d at 1021 (citing *Core-VentCorp.*, 11 F.3d at 1488); *see also*

18  *Ziegler*, 64 F.3d at 475.

19            Significantly, once the first two prongs of the specific jurisdiction analysis have

20  been established, "the forum's exercise of jurisdiction is presumptively reasonable." *Shute*

21  *v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *rev'd on other grounds*, 499

22  U.S. 585 (1991); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). "To

23  rebut that presumption, [the] defendant 'must present a compelling case' that the exercise

24  of jurisdiction would, in fact, be unreasonable." *Shute*, 897 F.2d at 386 (quoting *Burger*

25  *King*, 471 U.S. at 477); *see also Boschetto*, 539 F.3d at 1016 (same).

26            Defendants have not presented a compelling case that the exercise of jurisdiction in

27  Arizona would be unreasonable. The first factor weighs in favor of Plaintiff because

28  Defendants purposefully directed their actions at Arizona when they cancelled their agreed-

upon concert in Arizona, causing damage in Arizona. The second factor weighs slightly in favor of Defendants. Although Defendants reside in Tennessee, the Ninth Circuit recognizes that "[m]odern advances in . . . transportation have significantly reduced the burden of litigation in another [forum]." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). The third factor weighs in favor of Plaintiff because Arizona law applies to Plaintiff's claim. The fourth factor also weighs in favor of Plaintiff because Arizona has a strong interest in protecting against tortious interference with contracts to be performed in Arizona. The fifth factor is neutral because witnesses are likely based in both Tennessee and Arizona, although an Arizona court may resolve a case under Arizona law more efficiently. The sixth factor weighs in favor of Plaintiff because it is an Arizona organization. The seventh factor is neutral; the existence of an alternative forum is only an issue if jurisdiction in the forum is shown to be unreasonable. In weighing all seven factors, the Court finds that exercising jurisdiction in Arizona would not be unreasonable.

Plaintiff has made a *prima facie* showing of jurisdictional facts, and all three prongs of the specific jurisdiction test have been satisfied. Thus, had Plaintiff been able to state a meritorious claim in tort, the Court's exercise of personal jurisdiction over Defendants would comport with constitutional principles of due process and the District of Arizona would have personal jurisdiction in this matter.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Judgment on the Pleadings or Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 28). Defendants are entitled to judgment on the pleadings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this matter.

Dated this 18th day of January, 2023.

_____
Honorable John J. Tuchi
United States District Judge