**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Power of Fives LLC, | No. CV-22-00722-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| B&R Enterprises Incorporated, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion for Summary Judgment (Doc. 89, MSJ) supported by a Statement of Facts (Doc. 90, DSOF), to which Plaintiff filed a Response (Doc. 95, Resp.) supported by a Statement of Facts (Doc. 96, PSOF), and Defendants filed a Reply (Doc. 100, Reply). The Court will resolve the Motion without oral argument. LRCiv 7.2(f).

## I.    BACKGROUND

Plaintiff The Power of Fives, LLC is an Arizona business that "assist[s] Clean Election candidates in Arizona in qualifying for Clean Election funds" by "arrang[ing] venues at which candidates collect five dollar contributions with the goal of collecting a sufficient number of contributions to qualify." (DSOF ¶¶ 3, 4.) Power of Fives organized a concert for that purpose in Phoenix, Arizona, on November 6, 2021, and country music duo Big & Rich agreed to perform at the concert along with other acts, signing a Performance Agreement with non-party Select Artists Associates, LLC ("SAA"), which in turn entered into a Production Agreement with Power of Fives to "provide" Big & Rich and other artists at the event. (DSOF ¶¶ 1, 14, 15, 27, 77; Exs. 8, 9.)

Power of Fives now seeks tort damages from Defendants William Kenneth Alphin and John Rich,[1] who make up Big & Rich, and their management company, Defendant B&R Enterprises, Inc. (Defendants hereafter collectively referred to as "Big & Rich"), for ultimately refusing to perform at the concert when non-party Live Nation Worldwide, Inc. ("Live Nation"), which arranged for the concert venue and ticket sales, imposed a proof-of-vaccination-or-negative-COVID-test requirement on concertgoers. After calling off their performance, Mr. Rich took to social media to express his disapproval of the COVID restrictions imposed by Live Nation. Even though Power of Fives' managing member, Dr. Bob Branch, stated he also disapproved of the COVID restrictions, Power of Fives now claims Big & Rich's actions in refusing to perform and tweeting their disapproval of the COVID restrictions constituted wrongful interference with Power of Fives' contract with SAA—the Production Agreement—entitling Power of Fives to money damages under Arizona law.[2] (Doc. 1-2 at 2–9, First Am. Compl. (FAC) ¶¶ 47–49.)

Earlier in this lawsuit, the Court granted Big & Rich's Motion for Judgment on the Pleadings and dismissed this case, finding that, even when accepting as true Power of Fives' allegations in the FAC, Big & Rich's alleged actions in expressing their views against the COVID restrictions were not wrongful as a matter of law. (Doc. 45.) Power of Fives appealed, and a panel of the Ninth Circuit Court of Appeals entered a Memorandum Decision reversing this Court's judgment on the pleadings, finding that Power of Fives' allegations in the FAC "raise[] a material factual dispute as to whether [Big & Rich] harbored ill will towards [Power of Fives] and sought to undermine the Event because of its COVID policy." (Doc. 52-1 at 7.)

The parties have conducted discovery, and Big & Rich now move for summary judgment.

---

[1] Power of Fives also names as Defendants the wives of Mr. Alphin and Mr. Rich, Christiev Carothers and Joan Rich, to reach the marital property, but otherwise does not allege Mrs. Carothers or Mrs. Rich engaged in any tortious conduct.

[2] In the FAC, Power of Fives does not allege that Big & Rich interfered with any of Power of Fives' contractual relations except those with SAA pursuant to the Production Agreement. (FAC ¶¶ 47–49.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57

(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

## III.   ANALYSIS

Power of Fives raises a single claim against Big & Rich for intentional interference with contractual relations. Under Arizona law, such a claim requires a plaintiff to demonstrate:

(1) the existence of a valid contractual relationship;

(2) knowledge of the relationship on the part of the interferer;

(3) intentional interference inducing or causing a breach;

(4) resultant damage to the party whose relationship has been disrupted; and

(5) that the defendant acted improperly.

*Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986); *see also ABCDW LLC v. Banning*, 388 P.3d 821, 831 (Ariz. Ct. App. 2016).

In moving for summary judgment, Big & Rich first contend that no genuine issue of fact exists as to their liability for intentional interference with contractual relations because Power of Fives has produced no evidence that Big & Rich's conduct was wrongful such that they acted improperly. (MSJ at 3–10.) Second, Big & Rich argue that Power of Fives has not produced sufficient evidence that Big & Rich caused any losses such that Power of Fives suffered damages on Big & Rich's account. (MSJ at 11–13.)

With regard to liability, for its part, Power of Fives responds that the evidence shows Big & Rich did not cancel the Performance Agreement with SAA under the terms of that agreement, but rather breached. (Resp. at 3–5.) This is not probative to resolution of the questions before the Court under the facts of this case. There is no claim for breach of the Performance Agreement in this lawsuit, and Power of Fives makes no argument and cites no legal authority for the proposition that evidence of a breach of the Performance Agreement—a separate agreement—is sufficient by itself to show that any resulting

interference with the Production Agreement was wrongful.[3] Under Arizona law—as Big & Rich point out—a claim of intentional interference with contractual relations requires more than evidence of the interference; to be a tort, the interference must be wrongful. (MSJ at 7–9.)

On the subject of liability for intentional interference with contractual relations, the Arizona Supreme Court has stated that "proof that an actor intentionally induced a breach of contract is not sufficient to establish that the actor's conduct was improper. Rather, 'there is a requirement that the interference be *both* intentional and improper.'" *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005) (quoting Restatement (Second) of Torts ("Restatement") § 767 cmt. a (emphasis added)); *see also Neonatology Assocs., Ltd v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007). "If the interferer is to be held liable for committing a wrong, his liability must be based on more than the act of the interference alone. Thus, there is ordinarily no liability absent a showing that defendant's actions were improper as to motive or means." *Safeway Ins. Co.*, 106 P.3d at 1026. As a result, "[w]hile the 'intentional' element of tortious interference focuses on the mental state of the actor, the 'improper' element in contrast 'generally is determined by weighing the social importance of the interest the defendant seeks to advance against the interest invaded.'" *Id.* (quoting *Snow*, 730 P.2d at 212).

The Arizona Supreme Court elaborated further, stating that "[t]o determine whether . . . allegations constitute 'improper conduct' for purposes of this tort, we consider seven factors," with a particular focus on the first two:

> "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties."

*Safeway Ins. Co.*, 106 P.3d at 1027 (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters*

---

[3] Indeed, Power of Fives' response brief does not contain a single legal citation other than a citation to the well-known summary judgment standard.

- 5 -

& *Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 32 (Ariz. 2002); Restatement § 767).

> The Restatement also provides for a good faith exception to liability in this context:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

*Snow*, 730 P.2d at 212 (quoting Restatement § 773).[4] "'Good faith' connotes a moral quality or honesty of purpose." *Id.* at 213.

Big & Rich are entitled to summary judgment if there is no genuine dispute of fact as to the propriety of their motive or means such that the Court can conclude their actions were not improper as a matter of law. *See Neonatology Assocs.*, 164 P.3d at 694 (observing that a lack of the requisite impropriety in the conduct of the defendant can be resolved as a matter of law "when there is no reasonable inference to the contrary in the record"). Likewise, Big & Rich are entitled to summary judgment if the evidence raises no reasonable inference that they acted in bad faith. *See Kersten v. Cont'l Bank*, 628 P.2d 592, 596, 598 (Ariz. 1981).

In the Ninth Circuit's Memorandum Decision in this case (Doc. 52-1, Mem. Dispo.), that court decided that Power of Fives was entitled to seek evidence of Big & Rich's improper motive or means, citing in particular Power of Fives' allegations in the FAC of Mr. Rich's alleged Tweets to the public after Big & Rich canceled their performance at the event.[5] (Mem. Dispo. at 6–7.) To that end, in its Response and responsive Statement of

---

[4] Here, the Arizona Supreme Court notes that while the Restatement has "eschewed" the term "privilege" in this context, "[t]he Restatement covers essentially the same ground as 'privilege' by imposing a requirement, as an element of the cause of action, that the defendant's interference be 'improper.' These are different labels for the same concept." *Snow*, 730 P.2d at 212 (internal citations omitted).

[5] The Ninth Circuit decision also stated that Power of Fives was entitled to pursue evidence based on its allegation that Mr. Rich called Aaron Lewis (who that court errantly referred to as "Adam Lewis"), another artist scheduled to perform at the event, to dissuade him from performing at the event. (Mem. Dispo. at 6.) Although the FAC contained allegations of a call from Mr. Rich to Aaron Lewis (FAC ¶ 31), Power of Fives' Response and

Facts, Power of Fives refers only to single piece of relevant evidence as to Big & Rich's motive and means—evidence of a single Tweet, sent on October 13, 2021 "to around 400,000 individuals." (Resp. at 3; PSOF ¶¶ 33, 35.) Power of Fives argues that, in this Tweet, Mr. Rich "boasted about cancelling the November 6 concert, claiming to have 'shut down' the concert," which it argues led to damages in the form of lost ticket sales and is therefore sufficient evidence to create a genuine issue as to Big & Rich's improper motive or means to avoid summary judgment. (Resp. at 3; PSOF ¶¶ 33, 35, 51.) Power of Fives' responsive brief to Big & Rich's summary judgment motion contains no further reference to Tweets from Mr. Rich, and no evidence of the content of any Tweet is attached to Power of Fives' Statement of Facts, including the sole Tweet Power of Fives relies on—the October 13, 2021 Tweet.[6] Although Power of Fives referred to other Tweets in the FAC, under Rule 56, the Court cannot consider unsupported allegations from Power of Fives' FAC as evidence in deciding whether Power of Fives has established a genuine issue of material fact to resist summary judgment.

The subject matter and context of the October 13, 2021 Tweet comes only from the evidence provided by Big & Rich in conjunction with their summary judgment motion.[7] But to begin with, the citation in Power of Fives' Response brief directs the Court to Mr. Rich's deposition, in which he reads a Tweet chain dated October 20, 2021, not October 13, 2021. (Resp. at 3, referring to PSOF ¶ 51.) The Court only located the actual contents of the October 13, 2021 Tweet by going through the evidence attached to Big & Rich's Statement of Facts on its own, without an applicable citation from Power of Fives.[8]

responsive Statement of Facts contain no mention of such a call, nor do they refer to or contain any evidence of such a call. Power of Fives has thus forfeited its allegation of such a call under the Rule 56 summary judgment standard.

[6] Indeed, Power of Fives attaches a damages expert report as its only evidence in resisting Big & Rich's summary judgment motion.

[7] Big & Rich's Statement of Facts (Doc. 90) is 22 pages in length, which exceeds the maximum allowed as set forth in the Court's Scheduling Order (Doc. 27 at 5). Power of Fives did not object, and the Court in its discretion has considered Big & Rich's Statement of Facts in its entirety but warns the parties that they must seek leave of Court to exceed the page limit in any future filing.

[8] The Court was not required to do this. Rule 56 provides that the respondent must cite "to

- 7 -

In this way, Power of Fives here again fails to meet the Rule 56 requirement of pointing the Court with specificity to evidence creating a genuine issue of fact.

Big & Rich's evidence shows that on October 13, 2021, Mr. Rich tweeted: "Our November 6th show in Phoenix is cancelled. Sorry for the disappointment, we'll try to make it up ASAP!" (DSOF Ex. 22 at 2.) As a matter of plain language, "our show" refers to Big & Rich's performance, and the Court cannot read this Tweet to say Big & Rich stated they "shut down" the entirety of the event, as Power of Fives suggests. (*See* Resp. at 3.)

The October 20, 2021 Tweet chain that Mr. Rich was asked to read in his deposition—a Tweet chain which again is not attached to Power of Fives' summary judgment evidence—is as follows:

> Mr. Rich: "So why do we see millions of fans crammed into football stadiums every weekend chanting '#let's go, Brandon' without medical mandates on them? But certain venues are demanding vax papers, masks, tests."

> Mr. Rich's deposition testimony is that a Twitter follower wrote, "[A]re you doing the same thing as Travis Tritt is doing for his performances?"

> Mr. Rich: "I shut one down already last week. I'm on the exact page as Travis."

(DSOF Ex. 5, Rich Dep. at 25–26.)

Again, as a matter of plain language, the Court cannot read this Tweet chain to say Big & Rich shut down the entirety of Power of Fives' event, as Power of Fives suggests. The Twitter follower asked about Big & Rich's *performances* in the context of venues that have COVID restrictions Mr. Rich is against, and Mr. Rich confirms Big & Rich have canceled their performance—presumably at the Power of Fives event—for that reason.

Neither of these Tweets—one referred to by Power of Fives in its Response and one the Court located in Big & Rich's evidence—raise the reasonable inference that Big &

---

particular parts of materials in the record," and "[t]he court need consider only the cited materials" in the briefings. Fed. R. Civ. P. 56(c)(1), (3); *see also Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.")

Rich had an improper motive in any resulting interference with the Production Agreement between Power of Fives and SAA, as required for Power of Fives to prove its claim to a jury. *See Neonatology Assocs.*, 164 P.3d at 695 (stating "[a] question of fact as to a specific motive is only material if one of the possible motives supported by the record may be considered improper"). Moreover, as to both motive and means, the uncontroverted evidence of Mr. Rich's statements on Twitter shows that the content of the statements was not aimed at or intended to harm Power of Fives but rather was an expression of opposition to non-party Live Nation's proof-of-vaccination-or-negative-COVID-test requirement on concertgoers. As Big & Rich argue in their summary judgment, "The undisputed evidence demonstrates that John Rich had sincere political and personal objections to COVID vaccine requirements" and the "tweets explained his beliefs and actions regarding COVID restrictions." (MSJ at 10.)

Indeed, upon examination of Mr. Rich's Tweets and their context, his expression of opposition to the COVID restrictions was not a defamatory assertion of fact but rather an expression of opinion protected by the First Amendment, and therefore that expression was not improper interference with contractual relations as a matter of law. *See Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) ("We have held that when a claim of tortious interference with business relationships is brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation." Where "the context of the radio broadcast indicates [the defendant] was expressing his opinion and not a factual assertion" based on the "totality of the circumstances" test, the speech is protected under the First Amendment and "cannot be the basis" of an intentional interference with economic relations claim.) In essence, Power of Fives would have Big & Rich pay tort damages for Mr. Rich's exercise of his First Amendment free speech right in the form of his Tweets, which the law does not permit. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (applying Arizona law and citing with similarity *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 57 (1988), which noted "that when a claim for defamation fails because defendant's speech is

constitutionally protected, a claim for intentional infliction of emotional distress 'cannot, consistently with the First Amendment, form a basis for the award of damages'").

In its Response, Power of Fives repeatedly argues that "[o]pposition to COVID protocols is no excuse to violate the law." (Resp. at 5; *see also* Resp. at 9.) This argument lacks merit for a number of reasons, and once again Power of Fives does not support the argument with any legal authority. Power of Fives has raised no claim that Big & Rich "violated the law" in canceling their performance at the event due to their opposition to the COVID restrictions, let alone supported such a claim with evidence. Power of Fives does argue that Big & Rich breached the Performance Agreement—a proposition with which Big & Rich disagree—but as stated above, the applicable case law provides that such a breach of a separate agreement, even if it did occur, is not sufficient to show improper motive or means to support a claim for intentional interference with contractual relations with regard to the Production Agreement. Power of Fives has not pointed to any facts to show Big & Rich's cancelation of their performance was a "violation of law," nor can Mr. Rich's Tweets, which Power of Fives attempts to rely on to show improper motive or means, be considered a "violation of law." On the contrary, as stated above, those Tweets were Mr. Rich's expressions of opinion protected by the First Amendment. Power of Fives advances no other cognizable theory supported by relevant evidence to resist Big & Rich's summary judgment motion, and Big & Rich are thus entitled to summary judgment as to their liability for intentional interference with contractual relations.[9]

. . .

---

[9] Alternatively, the Court also concludes Power of Fives has raised no genuine issue of material fact as to Big & Rich's good faith conduct, that is, that they did not act with an honesty of purpose in Mr. Rich's expression of opposition to the COVID restrictions. Indeed, all reasonable inferences from the evidence show Big & Rich acted in good faith, and Power of Fives has produced no evidence that Big & Rich harbored ill will toward Power of Fives or that their conduct was aimed at or intended to damage Power of Fives on account of ideological, political, or other differences. If anything, the evidence shows Big & Rich harbored ill will toward Live Nation on account of the COVID restrictions it imposed, and Live Nation is neither a party to this litigation nor a party to the Production Agreement with which Power of Fives claims Big & Rich interfered. Big & Rich are entitled to summary judgment on this basis as well. *See Kersten*, 628 P.2d at 596, 598 (affirming summary judgment in favor of the defendant where the plaintiffs presented no "evidence which would entitle a finder of fact to find a lack of good faith" on the part of the defendant, and thus "[a]ny interference was neither unjustified nor tortious").

Finally, the Court notes that Power of Fives also argues that a genuine issue of fact exists as to whether Big & Rich's alleged interference with the Production Agreement between Power of Fives and SAA resulted in damages, and indeed the only evidence Power of Fives produces in opposing Big & Rich's summary judgment motion is a damages expert report. (Resp. at 9–10; PSOF Ex. A.) Power of Fives seems to conflate damages with liability by implying that because ticket sales to the event may have been lost after Big & Rich canceled their participation in the event, their conduct must have been improper. (Resp. at 10.) That is incorrect. To reach a damages inquiry here, Power of Fives must first demonstrate a genuine issue of material fact as to Big & Rich's liability, and in particular as to interference with the Production Agreement by *improper* motive or means. *See, e.g.*, *Morley v. Super. Ct. of Ariz.*, 638 P.2d 1331, 1333 (Ariz. 1981) (affirming bifurcation of trial on liability from trial on damages, citing *Federal Practice & Procedure*, C. Wright & A. Miller (1971), for the proposition that "[l]ogically liability must be resolved before damages are considered" and "[o]ften the evidence pertinent to the two issues is wholly unrelated"). In other words, the fact that Power of Fives may have lost ticket sales does not mean Big & Rich acted with an improper motive or means.

**IT IS THEREFORE ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 89).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this matter.

Dated this 22nd day of July, 2026.

Honorable John J. Tuchi
United States District Judge

- 11 -